**SOUTHEASTERN FAIR ASS'N v.
UNITED STATES.**

No. 45399.

Court of Claims.

Oct. 4, 1943.

"
"
"
"
"
"
"
"

"
"

J. C. Murphy, of Atlanta, Ga., for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the briefs), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

Plaintiff, Southeastern Fair Association, sues to recover taxes assessed against it and paid by it under Titles VIII and IX of the Social Security Act, 42 U.S.C.A. §§ 1001 et seq. and 1101 et seq., which statute imposes excise taxes upon employers for the purpose of providing funds to meet social security payments. Plaintiff contends that the provisions of Sections 811 and 907 of the Social Security Act, 42 U.S.C.A. §§ 1011 and 1107, exempt it from these taxes, by making the taxes inapplicable to " * * * a corporation, * * * organized and operated exclusively for * * * educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual."

We have found, and the Government concedes, that no part of plaintiff's net earnings inures to the benefit of any private shareholder or individual. It contends, however, that plaintiff does not fulfill the requirement, for exemption, that it be organized and operated exclusively for educational purposes.

Plaintiff was organized for the purpose of conducting an annual fair in or near Atlanta, Georgia. The objects of the fair are stated in plaintiff's charter, quoted in finding 1. Plaintiff leases the fair grounds from the city of Atlanta, the material terms of the lease being shown in finding 7. Plaintiff obtained its initial capital by selling preferred stock in the amount of $69,000 to individuals and business firms in Atlanta. Its 10 shares of voting stock are held by the Chamber of Commerce of Atlanta. Its lease agreement with the city forbids it to pay dividends on its stock. It makes a profit on the annual fair from admission charges and fees paid by amusement concessionaires and commercial exhibitors. The profit is used to pay salaries and wages to employees and to maintain, repair and improve the buildings and grounds.

The exhibits and serious activities of the fair are described in findings 10-14. They are unquestionably educational, planned and managed by persons whose business it is to inform people about the resources of the region and the country, and methods by which they may be conserved, utilized, and improved. But, the Government says, the amusements described in finding 15, furnished by plaintiff at the grandstand, and by a carnival company and other entertainers who buy concessions, are not educational, hence plaintiff does not, within the meaning of the statute, operate "exclusively for * * * educational purposes."

Plaintiff's purpose in furnishing free noneducational amusement at the grandstand is to get people to come to the fair, pay the 50-cent admission charge, and see the educational exhibits. Its purpose in renting concessions to commercial entertainers, and space to commercial exhibitors, is to get money to operate the fair, as well as, again, to attract attendance.

Whether an enterprise is exclusively educational, or religious, or charitable, for tax exemption purposes, depends, not upon how it makes its money, but upon the purpose for which it makes it, that is, how it spends what it makes. Trinidad v. Sagrada Orden, 263 U.S. 578,

44 S.Ct. 204, 68 L.Ed. 458; Sand Springs Home v. Commissioner, 6 B.T.A. 198. This is necessarily so, unless the exemption is to be denied to all entities not adequately endowed with funds which other persons have made by engaging in some enterprise for profit. We think that the evidence shows no other purpose, directly connected with the conduct of the fair, than an educational one. It may well be that those who contributed capital to plaintiff may have expected to make money out of the patronage of those who came to Atlanta to attend the fair, or to share in the greater prosperity which might come to the region if its agriculture should be made more productive as a result of the education which those who attended the fair might gain. These are motives which sometimes actuate donors to colleges and universities, but these institutions do not lose their tax exemption thereby.

The Government urges that exemptions from social security taxes should be more narrowly restricted than exemptions from income taxes, because, if the exemption is allowed, employees of the exempted employer do not receive the benefits of the Social Security Act when they become unemployed or reach old age. We have doubts of the propriety of attributing to Congress an intention that substantially the same language, used in two different statutes, should have a substantially different meaning in each of the acts. But we think the present case is plainly enough within the scope of the exemption in the Social Security Act to make it unnecessary to decide what would be the right approach to a case which lay on the border line.

Plaintiff may recover its payments, with interest as provided by law. Entry of judgment may await the filing of a stipulation by the parties as to the amount.

It is so ordered.

JONES, Judge, took no part in the decision of this case.